

*William Cafaro, Esq.*
ADMITTED IN NY, CA, MD & TX
Email: *bcafaro@cafaroesq.com*

*Amit Kumar, Esq.*
*Managing Attorney*
ADMITTED IN NY & NJ
Email: *akumar@cafaroesq.com*

108 West 39th Street, Suite 602
New York, New York 10018
Telephone: 212.583.7400
Facsimile: 212.583.7401
*www.cafaroesq.com*

*Louis M. Leon, Esq.*
*Associate*
ADMITTED IN NY
Email: *lleon@cafaroesq.com*

*Andrew S. Buzin, Esq.*
*Of Counsel*
ADMITTED IN NY, FL & DC

_____

May 2, 2019

*Via ECF*
Hon. Vernon S. Broderick, U.S.D.J
United States District Court
Southern District of New York
40 Foley Square, Courtroom 518
New York, NY 10007

                              Re:    Ovalles Acosta v. Prudent Management, LLC, et al
                                    Case No.: 17-cv-07590

Your Honor:

      This is a joint request for approval[1] of the Settlement Agreement[2] in the above Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") action. *See, Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). The fully executed Settlement and Release Agreement ("Agreement") appended as Exhibit "1".

**I.    Background and Claims**

      The Plaintiff Jose A. Ovalles Acosta ("Mr. Acosta" or "Plaintiff") filed his complaint on October 4, 2017, seeking damages for defendants' alleged violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). According to the Plaintiff, the Defendants owned and managed several residential apartment buildings in Bronx County, New York. According to Mr. Acosta, he was a porter who was assigned to work in two buildings whose duties included, but were not limited to, mopping, sweeping, window cleaning and general maintenance along with garbage collection, sorting and removal. According to the Plaintiff he began working for the Defendants in February 2014 and though he currently works for the Defendants he does not have a claim beginning April 30, 2018. During the period in question, Mr. Acosta recollects working Monday through Saturday, inclusive, from 7:00AM until 7:00PM and Sundays from 7:00AM until 12:00PM. According to Mr. Acosta, from the beginning of his employment until the end of April 2017, he was paid $400.00 every two weeks. From the end of

---

[1] Defendants only join this request for sections I, II, and III of this request for approval and take no position on Part IV of this letter which deals directly with Plaintiff's counsel's request for attorneys' fees and costs.

[2] This letter is tendered pursuant to Rule 408 of the Federal Rules of Evidence and § 4547 of the C.P.L.R., with the express understanding that no part hereof or any document submitted herewith may be utilized for any purpose if the Agreement is not approved and litigation must go forward, nor may any of the content or any related documents be used for any purpose except to enforce the Agreement.

April 2017 to date he has been paid $600.00 every two weeks.  Also, according to his best recollections he did not receive an annual wage notice when he first began working for the Defendants or since then, and his wage statements were inaccurate as they did not show the correct number of hours he worked for the Defendants.  Given these claims, Mr. Garcia filed a complaint for unpaid minimum wages, overtime, spread of hours and statutory record keeping violations under the FLSA and NYLL.

The defendants dispute the Plaintiff's claims that he is owed this money. The defendants challenged the hours that Plaintiff claims that he worked and whether there were any wage statement violations. The defendants also raised various defenses.

The Parties exchanged paper discovery in this action and then went to a mediation before the Honorable Debra C. Freeman, U.S.M.J for a settlement conference.  After hours of negotiation, the parties were unable to come to terms for the settlement.  After the mediation the parties continued with discovery in this action disclosing hundreds of pages of paper discovery. Moreover, the Defendants deposed the Plaintiff in this action and Plaintiff deposed one of the Defendants in this action.  After the Plaintiff's deposition the parties restarted settlement negotiations to arrive at the attached Agreement.  Since the action progressed to depositions, both the parties were able fully assess their claims and defenses in this action.

## II.    The Settlement Reached Between the Parties

A spreadsheet showing a computation of the likely value of the Plaintiff's claims, based on his best recollection, is appended hereto as Exhibit "2".  For the purposes of settlement only, the Plaintiff agreed to lower the number of hours he worked per week to 60.  This was to account for any meal breaks the Plaintiff may have taken and to take into account sick, personal, and vacation days.

As such, according to the Plaintiff's best case scenario, where there is a likely compromise in the number of hours the Plaintiff worked, the amount of wages he is owed is $106,972.50. Therefore, with this settlement of $60,000.00, the Plaintiff is recovering **56.1%** of the likely value of his claim based on his best-case scenario.

Plaintiff believes that the $60,000.00 settlement amount is a fair compromise to resolve this case without further litigation, and without subjecting both parties to the time and expense of more extensive discovery and ongoing litigation.  While Plaintiff was confident that he would be able to challenge the Defendants' inferences successfully, Mr. Acosta is uncomfortable testifying in a formal setting.  If his testimony had been rejected by the trier of fact, his recovery could have been significantly minimized.  Lastly, each settling party is represented by counsel experienced in wage and hour practice.

The settlement agreement reflects a reasonable compromise of the disputed issues and any actual or potential claims in the totality of the circumstances.  In addition, the parties believe that the certainty of settlement is better than the uncertain outcome of protracted litigation, and Plaintiff

prefers to receive his proceeds without the inevitable delay and significant risks that continued litigation would entail.

### III.     The Court Should Find the Proposed Settlement Fair and Reasonable

A FLSA settlement should receive judicial approval where it is "fair and reasonable."  *See Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).  Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (quoting *Crabtree v. Volkert, Inc*., No. 11–0529–WS–B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013)).  Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes."  *In re Penthouse Executive Club Compensation Litig*., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement).  In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'"  *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.,* 679 F.2d 1350, 1354 (11th Cir. 1982)).

In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of the circumstances, including the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.  *Wolinsky*, *supra* at 335.

*Plaintiff's Range of Possible Recovery*

As stated above, the proposed settlement represents 56.1% of the Plaintiff's claims and is certainly toward the higher end of the range of reasonableness of recovery, particularly after considering the obstacles Plaintiff faced.  It will also enable Plaintiff to avoid anticipated burdens and risks in going forward.

If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the potential outcome.  *Morris v. Affinity Health Plan*, 859 F.Supp.2d 611, 620 (S.D.N.Y. 2012).  In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the Plaintiff…against the relief offered by the Settlement." *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012).  In light of the totality of the circumstances, the settlement represents a reasonable compromise of the *bona fide* disputes in this matter.  The settlement eliminates risks and ensures that the plaintiff will recover most of his damages.

*Whether the Settlement Agreement is the Product of Arm's-Length Bargaining*

A "presumption of fairness, adequacy and reasonableness may attach to a…settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted). The Parties engaged in discovery and participated in arm's length settlement discussions in order to arrive at this settlement. Because the settlement involves a clear and *bona fide* wage dispute in contested litigation, which was resolved through an arm's-length settlement process, it should be granted judicial approval. Moreover, the agreement itself is limited to the Plaintiff's wage and hour and employment law claims. The agreement also does not contain a confidentiality provision nor does it contain a non-disparagement clause.

*Possibility of Fraud or Collusion*

There is no possibility that this settlement was precipitated by reason of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations between counsel. The Parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 05 CIV 10240, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y July 27, 2007). Here, the settlement was reached after the Parties were able to fully evaluate the strengths and weaknesses of the claims and defenses presented in the case. At all times, negotiations took place between experienced counsel and were at arm's-length. Thus, there was no fraud or collusion between counsel and as such, the Settlement Agreement should be approved.

### IV. Plaintiff's Counsel is Entitled to a Reasonable Fee of One-Third of the Settlement Amount

Counsel is entitled to reasonable attorneys' fees to compensate for work in recovering the unpaid overtime wages and statutory violations under the FLSA and NYLL. Under the retainer agreement, Plaintiff's counsel is entitled to a one third fee on the gross recovery of Sixty Thousand Dollars and Zero Cents ($60,000.00) which equates to Twenty Thousand Dollars and Zero Cents ($20,000.00), plus the out of pocket costs and disbursements, which total Two Thousand Forty Dollars and Forty Nine Cents ($2,040.49)[3], consisting of the filing fee, process service costs, travel expenses to and from the deposition of the Plaintiff, and a deposition transcript. Although the undersigned fully recognizes the Court's prerogative to evaluate the attorneys' fee arrangement in a FLSA matter, not all courts in this circuit have read the *Cheeks* decision to require this assessment. *See Gutierrez v. 352 East 86th St. Rest. Inc.*, 2016 U.S. Dist. LEXIS 23967, *3 -4 n. 1 (S.D.N.Y Feb. 19, 2016) ("I do not understand the FLSA to regulate the relationship between the employee as plaintiff and his counselor to alter the freedom of contract between a client and his attorney"). The foregoing notwithstanding, the undersigned submits as follows in support of the requested fee:

---

[3] The request for reimbursement of costs do not include the transcript for one of the deposition transcript taken in this action, which counsel has decided to absorb in order to finalize the settlement. This transcript cost $826.55.

Plaintiff's counsel is entitled to reasonable attorneys' fees to compensate for work in recovering withheld compensation in this action. I have personally expended 112.8 hours in the prosecution of this case. *See* Exhibit 3, Attorney Kumar's time records. My paralegal, Nicholas Duran also worked on this action, however, his time records have not been provided to the Court as the lodestar of the undersigned exceeds the requested fee. Should the Court require these records, they will be provided.

"To determine the quality of representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y Jan. 31, 2007) (*citing In re Global Crossing and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)).

I have been an associate with the Law Offices of William Cafaro since 2013. I earned my B.B.A. with dual concentrations in Finance and Computer Information Systems, *cum laude*, from George Washington University in 2005 and a J.D from Hofstra University School of Law in 2012. While in law school, I worked as a law clerk for several employment law firms, including Schwartz & Perry, LLP[4] and Outten & Golden LLP. Also, while in law school, I was a judicial intern for United States Magistrate Judge Ronald L. Ellis (ret.) of the Southern District of New York. I was admitted to practice in the state courts of New York and New Jersey in 2013 and later that same year I was admitted to practice before the Southern and Eastern Districts of New York. Since being admitted in 2013, I have focused primarily on plaintiffs' employment matters in both wage and hour matters as well as discrimination actions. Further, while working at the Law Offices of William Cafaro, I have had the opportunity to second chair several successful wage and hour actions through trial. *See, e.g. Ayala v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*, 14-cv-5269 (ARR) (JO), 2016 U.S. Dist. LEXIS 127425 (E.D.N.Y Sept. 19, 2016).

I also prevailed in a wage and hour case which I tried in the Southern District of New York, *Cajamarca v. Yerina Restaurant Corp., et al.*, No. 15-cv-08244 (GHW). I have also been selected to the New York Super Lawyer's Rising Star List for the years 2017 and 2018. Moreover, I am an officer of the South Asian Bar Association of New York as well as a member of the National Employment Lawyers Association – New York Chapter. My normal hourly rate for wage and hour actions is $275.00 per hour and the Plaintiff is requesting this rate for his work in this case. This rate is reasonable based on my experience. *See*, *Solnin v. Sun Life & Health Ins. Co.*, No. 08-cv-2759 (DRH)(AYS), 2018 U.S. Dist. LEXIS 168047, at *9 (E.D.N.Y. Sep. 28, 2018) (awarding mid-level associate with 5 years of experience a rate of $275 and noting proper rate for senior associates is up to $325 per hour and for experienced partners is between $300-$450 per hour in this district); *Remache v. Mac Hudson Grp.*, No. 14 CV 3118 (AMD)(RML), 2018 U.S. Dist. LEXIS 154099, at *63 (E.D.N.Y. Sep. 7, 2018) (In a FLSA default action awarding an hourly rate of $275.00 for associates with 4-9 years of experience)

At the requested rates, the total lodestar is $31,020.00. Under the retainer agreement, Plaintiff's counsel is entitled to receive Twenty Thousand Dollars and Zero Cents ($20,000.00) from the proposed settlement as attorneys' fees, and an additional $2,040.49 in reasonable out of

---

[4] Now called Schwartz Perry & Heller, LLP

pocket disbursements incurred by attorneys and ordinarily charged to the file. *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). The out of pocket expenses are:

| Disbursements | | |
|---|---|---|
| Company | Amount | Description |
| Filing Fee | $ 400.00 | Filing with SDNY |
| Servico | $ 128.00 | Service of Process on Corps |
| Gotham | $ 240.00 | Service on Individual Defs |
| Court Reporting Inc. | $ 732.50 | Order Pltfs EBT Transcript |
| Diamond Reporting | WAIVED | Order of Defs EBT Transctip |
| Uber | $ 19.99 | Travel to and from EBT w/ client |
| Asset Source | $ 520.00 | Checks Defs Assets |
| **TOTAL** | **$ 2,040.49** | |

Where, like here, the lodestar outstrips the requested fee, the fee should be approved.

**V.  Conclusion**

For the reasons set forth above the Parties jointly request that the Court approve the settlement as reflected in the Agreement. Plaintiff's counsel further requests that the Court approve the attorney's fee award reflected in the Agreement as fair and reasonable.

Respectfully submitted,
LAW OFFICES OF WILLIAM CAFARO

_____
By Amit Kumar, Esq. (AK 0822)
*Attorneys for Plaintiff*
108 West 39th Street, Suite 602
New York, New York 10018
(212) 583-7400
Akumar@CafaroEsq.com

cc:
Defense Counsel (via ECF)