USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __2/4/2021__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
:
JOSE A. OVALLES ACOSTA,                                    :
:
                           Plaintiff,              :
:         17-CV-7590 (VSB)
         -v-                                                :
:              ORDER
:
PRUDENT MANAGEMENT, LLC, et al.,                           :
:
                           Defendants.             :
-----------------------------------------------------------X

VERNON S. BRODERICK, United States District Judge:

       The parties have advised me that they have reached an amended settlement agreement in this Fair Labor Standards Act ("FLSA") case. (Doc. 77.) Parties may not privately settle FLSA claims with prejudice absent the approval of the district court or the Department of Labor. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015). In the absence of Department of Labor approval, the parties must satisfy this Court that their settlement is "fair and reasonable." *Velasquez v. SAFI-G, Inc.*, No. 15-CV-3068, 2015 WL 5915843, at *1 (S.D.N.Y. Oct. 7, 2015). For the reasons stated herein, I find that the settlement of the parties is fair and reasonable and therefore approve it.

       **I.**      **Legal Standard**

       To determine whether a settlement is fair and reasonable under the FLSA, I "consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or

collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). "In addition, if attorneys' fees and costs are provided for in the settlement, district courts will also evaluate the reasonableness of the fees and costs." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020). In requesting attorneys' fees and costs, "[t]he fee applicant must submit adequate documentation supporting the [request]." *Id.* The Second Circuit has described a presumptively reasonable fee as one "that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Restivo v. Hessemann*, 846 F.3d 547, 589 (2d Cir. 2017) (citation omitted). A fee may not be reduced "merely because the fee would be disproportionate to the financial interest at stake in the litigation." *Fisher*, 948 F.3d at 602 (citing *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005)). "When a district court concludes that a proposed settlement in a FLSA case is unreasonable in whole or in part, it cannot simply rewrite the agreement, but it must instead reject the agreement or provide the parties an opportunity to revise it." *Id.* at 597.

## II. Discussion

On May 2, 2019, the parties submitted their first joint request for approval of their settlement agreement. (Doc. 59.) On July 23, 2020, I denied the parties' request on the basis that the overbroad release in the proposed settlement agreement rendered the agreement not fair and reasonable. (Doc. 61.) Pursuant to my July 23 Order, the parties submitted a revised proposed settlement agreement and a letter on January 20, 2021 detailing why they believe the settlement reached in this action, and the contemplated attorney's fees, are fair and reasonable. (Doc. 77.) The parties submitted a supplemental letter on January 29, 2021 correcting an erroneous settlement figure in their January 20 letter and clarifying the correct settlement amount. (Doc. 79.)

I have independently reviewed the settlement agreement and the supporting evidence in order to determine whether the terms of the settlement agreement are fair, reasonable, and adequate. I believe that they are and therefore approve the settlement agreement of the parties.

A.  *Settlement Amount*

I first consider the settlement amount. The agreement provides for the distribution to Plaintiff of $52,500.00, with $17,873.82 of that amount to be distributed in attorney's fees to counsel, resulting in a total payment to Plaintiff of $34,626.18. (Doc. 77-1, at ¶ 3; Doc. 77, at 6; Doc. 79, at 2.) This reflects a reduction of $7,500 from the previously agreed-upon settlement amount, and a reduction of $3,333.34 in the net proceeds Plaintiff is entitled to receive, as compared to those provided for under the parties' initial settlement agreement. (Doc. 79, at 2.) While the settlement amount is therefore only a fraction of the total amount Plaintiff claims is owed to him, Plaintiff represents that this settlement is fair in light of the litigation risks particular to this case. (Doc. 77, at 3.) Moreover, although the amended settlement amount is lower than the original $60,000 settlement amount that I previously deemed fair and reasonable, (Doc. 61, at 3), the parties submit that the decrease in proceeds to the Plaintiff is "offset by more favorable payment terms as well as an attorney's fee concession," (Doc. 79, at 1). Specifically, in exchange for the decrease in the gross settlement amount, Plaintiff is entitled to receive the entire balance of the settlement proceeds due to him a month after vacating the premises in question under the modified agreement, (Doc. 77-1, at ¶ 3(b)), as opposed to receiving payments in installments over six months, as provided for in the previous agreement, (Doc. 59-1, at ¶ 3). In addition, so as to lower the amount by which Plaintiff's net proceeds were reduced since the previous settlement agreement, Plaintiff's counsel made a fee concession reducing the previously requested award of attorneys' fees and costs from $22,040.49 to $17,873.82. (Doc. 79, at 2.)

Counsel represents that Plaintiff's maximum recovery in this case would be $106,972.50. (Doc. 77, at 2.) That figure does not appear to include liquidated damages, (Doc. 79-1), which are provided for by the FLSA at a rate of 100 percent of unpaid wages. *See Reyes v. Cafe Cousina Rest. Inc.*, No. 18-CV-1873 (PAE) (DF), 2019 WL 5722475, at *5 (S.D.N.Y. Aug. 27, 2019), *report*

*and recommendation adopted*, No. 18-CIV-1873 (PAE) (DF), 2019 WL 5722109 (S.D.N.Y. Oct. 7, 2019). However, even accounting for a larger maximum recovery, I find the settlement amount to be reasonable in light of the procedural history of this case and the risks of proceeding with the litigation.

Plaintiff alleges that he was paid a fixed biweekly salary that did not pay him at the minimum wage rate of pay, and did not provide him with appropriate overtime and spread of hours premiums. (Doc. 77, at 2.) Plaintiff also alleges that he is entitled to damages for Defendant's statutory record-keeping violations. (*Id.*) Defendants deny these allegations. (*Id.*) The parties engaged in extensive paper discovery and Defendants took Plaintiff's deposition before the parties arrived at this agreement, suggesting that the settlement amount reflects the strengths of the parties' respective cases based on the documentary evidence available. I granted numerous extensions of time to file the amended agreement, (Docs. 63, 65, 67, 69, 71, 74, 76), which counsel represents were necessary for the multiple rounds of redrafting that finally allowed the parties to arrive at a suitable accord, (Doc. 79, at 2). Continuing further with the litigation would introduce uncertainty and Plaintiff would have to expend time and money on discovery, motion practice, and trial. In addition, any recovery Plaintiff did eventually receive would be delayed. Finally, there is no basis for me to believe that there was any fraud or collusion involved in the settlement. The instant settlement agreement appears to have been the result of arm's-length negotiations between counsel experienced in wage and hour matters, following extensive discovery, including depositions.

Therefore, based on the representations of the parties and my own analysis of the totality of the circumstances present here, I find that the settlement agreement appears to be a fair and reasonable resolution of this dispute.

    **B.**    *Attorney's Fees*

I next consider the attorney's fees contemplated in the settlement agreement. The attorney's

fees sought are $17,873.82, (Doc. 77-1, at ¶ 3(b)), which represent approximately one-third of the total $52,500 settlement amount. This amount reflects a $4,166.67 reduction from the previous attorney fee request of $22,040.49, which I found reasonable at the time in light of the work performed by Plaintiff's counsel on this case. (Doc. 79, at 2.) Plaintiff's counsel previously submitted its billing records and costs in this case on May 2, 2019, in connection with its previous request for settlement approval. (Doc. 59-3.) Furthermore, since that date, Plaintiff's counsel states that it has expended "far in excess of an additional 20 hours on the phone with the Plaintiff and the defense attorney" in order to arrive at the instant agreement. (Doc. 79, at 2.)

As an initial matter, courts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases. *See Pinzon v. Jony Food Corp.*, No. 18-CV-105 (RA), 2018 WL 2371737, at *3 (S.D.N.Y. May 24, 2018) ("When using a 'percentage of the fund' approach, 'courts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases.'" (quoting *Meza v. 317 Amsterdam Corp.*, No. 14-CV-9007 (VSB), 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015)). Furthermore, prior to the submission of the parties' original request for settlement approval, Plaintiff's counsel had expended 112.8 hours of time in this case, including engaging in document discovery and participating in mediation, as well as dealing with the specific issues that arose in this case when Defendants' counsel absconded in the middle of settlement discussions. (Doc. 59-3.) As discussed in my July 23 Order, the previous requested award of $22,040.49 falls within the range of multipliers that courts in this district approve as reasonable. (Doc. 61, at 4.) Considering the additional time that Plaintiff's counsel expended to negotiate and rewrite the settlement agreement on top of the previous 112.8 hours logged, a reduced attorney's fee award of $17,873.82, far from representing a windfall for Plaintiff's counsel, is by the same logic all the more reasonable.

Based on this analysis, I find the attorney's fees contemplated in the settlement agreement to be fair and reasonable.

## C. *Settlement Release*

The amended settlement agreement contains a mutual general release. (Doc. 77-1, at ¶ 5.) Under the agreement, Plaintiff releases Defendants not only from wage-and-hour claims, but also from any claims "regarding any matter whatsoever from the beginning of the World through the Effective Date of this Agreement," including those not asserted in the instant lawsuit. (Doc. 77-1, at ¶ 5(a).) Reciprocally, Defendants release Plaintiff of any claims whatsoever "regarding any matter from the beginning of the World through to the Effective Date of this Agreement." (*Id*. ¶ 5(b)). Counsel claims that Plaintiff specifically requested the inclusion of this provision because he feared the risk that Defendants would make claims for rent or damage to the room owned by Defendants that he currently occupies. (Doc. 79, at 2–3.) Defendants, fearing claims against them in connection with the adequacy of the tenancy, also reportedly desired a general release. (*Id*. at 3.) The mutual general release thus reflects the parties' mutual intentions to come to an agreement that would allow them to "go their separate ways." (*Id*.)

While courts in this district routinely reject release provisions that "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)), some courts have approved release provisions on the basis of their mutuality, *see, e.g.*, *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13-cv-5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) (approving mutual general release); *Cionca v. Interactive Realty, LLC*, 2016 WL 3440554, at *3–4 (S.D.N.Y. June 10, 2016) (approving mutual broad general release in non-class FLSA settlement); *Souza v. 65 St. Marks Bistro*, 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015) (approving mutual broad general release in non-class FLSA settlement on reasoning that "[a] mutual release will ensure that both the employees and the employer are

walking away from their relationship up to that point in time without the potential for any further disputes").

As stated above, I am satisfied that the revised settlement agreement here is the result of even-handed negotiations between competent counsel. Crucially, the parties here have each submitted plausible reasons for seeking reciprocal general releases, assuaging concerns that the agreement only enriches Defendants without providing Plaintiff with any comparable benefit. Moreover, although the releases contemplated by the agreement are broad in the scope of claims that they propose to waive, they do not release any future claims by the parties. Furthermore, as the instant lawsuit is not a class action, the release provisions only bind the parties to the suit, further reducing the likelihood that the settlement agreement contemplated here would be unfavorable to other employees of Defendants. Based on this analysis, I find no reason to withhold approval of the settlement agreement on the basis of the agreement's release provisions.

### III.    Conclusion

For the foregoing reasons, the settlement agreement of the parties is hereby APPROVED.

The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

Dated:      February 4, 2021
            New York, New York

_____
Vernon S. Broderick
United States District Judge